UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARGARET E. HARRIS and
LAURENCE J. HARRIS,

                                        Plaintiffs,

         v.                                              3:03-cv-1076

PROFESSIONAL HOME CARE, INC.,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

         Plaintiff Margaret Harris commenced the instant action against Defendant asserting

a claim for medical malpractice.  The matter was tried before the Court as finder of fact on

October 4, 5, and 6.  The following constitutes the Court's findings of fact and conclusions of

law.

## I.      FACTS

         Defendant Professional Home Care, Inc. ("PHC") is a home nursing organization.

On April 4, 2003, PHC employee Nancy Kirchner instructed Plaintiff how to self-inject

Lovenox.[1]  Lovenox is to be administered subcutaneously.  Kirchner informed Plaintiff that

the medication could be injected either in the anterior thigh or the abdomen.  Kirchner further

informed Plaintiff that the injection could be given at a ninety degree angle.  Plaintiff self-

_____

         [1]Lovenox is an anticoagulant.  Lovenox is a heparin given to people with blood clots.  Prior to
taking the Lovenox, Plaintiff has been taking Coumadin, another anticoagulant.  Plaintiff discontinued
taking Coumadin on April 3, 2005.

administered the medication into her left anterior thigh. Plaintiff's husband administered another injection of Lovenox later that day.

Later that day, Plaintiff experienced pain in the lateral area of her left leg. On April 5, 2003, Plaintiff went to a walk-in clinic due to pain in her left hip and leg. The physician at the clinic noted ecchymosis in the area of the injection. The physician did not note any swelling of the leg. Plaintiff received two additional injections of Lovenox on April 5.

Early in the morning of April 6, 2003, Plaintiff experienced increased pain in her leg. The pain caused her to fall to the floor. Plaintiff was taken by ambulance to the emergency room. An ultrasound of Plaintiff's leg revealed deep vein thrombosis. Plaintiff was then admitted to the hospital. The physicians at the hospital diagnosed Plaintiff with deep vein thrombosis. Plaintiff was treated with Heparin. She was given an injection of Heparin and a Heparin drip.

In the late night hours of April 6 and early morning hours of April 7, Plaintiff had increased pain in her left leg. She also experienced a drop in her blood pressure. A blood test revealed excessive amounts of Heparin. Accordingly, the Heparin was discontinued. Plaintiff's blood pressure, however, continued to be low. On the morning of April 7, Plaintiff was moved to the Intensive Care Unit.

While in the ICU, Plaintiff was observed to have edema in the left leg. At approximately noon on April 7, 2005, Plaintiff underwent a CT scan of her abdomen and pelvis. The CT scan revealed a hemorrhage in the left lateral pelvic muscles and adjacent thigh. Plaintiff was found to have compartment syndrome. Plaintiff was diagnosed with left sciatic neuropathy caused by hemorrhage in the left lateral pelvic and adjacent thigh. The

sciatic neuropathy caused Plaintiff to experience foot drop, for which she takes pain medication and uses a walker.

Plaintiff claims that Defendant was negligent in instructing Plaintiff to inject the Lovenox in the thigh.

## II.    DISCUSSION

To succeed on her negligence claim, Plaintiff has the burden of proving by a preponderance of evidence that Defendant breached a duty of care owed to her that caused her to sustain injury.  There is no question that Defendant owed Plaintiff a duty of care.

### a.    Whether Defendant Breached the Duty of Care

The Court finds that Plaintiff failed to sustain her burden that Defendant breached the duty of care.  There is evidence before the Court that the instructions for Lovenox provide for an injection into the abdomen.  The experts further testified that the abdomen was an appropriate injection point.  Contrary to Plaintiff's contention, however, a manufacturer's instructions are not prima facie evidence of the standard of care.  See Spensieri v. Lasky, 94 N.Y.2d 231, 239 (1999).  "[T]he standard of care . . . is one established by the profession itself."  Id. at 238.  "The testimony of an expert is necessary to interpret whether the drug in question presented an unacceptable risk for the patient in either its administration or the monitoring of its use."  Id.  There was expert evidence that a subcutaneous injection can properly be given into the thigh at a ninety degree angle.

A significant factor in determining the proper location of a subcutaneous injection and the angle at which the injection should be given is the quantity of subcutaneous tissue. In this case, although it is clear that the abdomen is an acceptable, and perhaps preferred, point of injection, there was ample testimony that the thigh also is an acceptable location

provided there was enough subcutaneous tissue on the thigh.  Plaintiff's own expert testified that a thigh injection is acceptable provided there is sufficient subcutaneous tissue.  Kirchner testified that Plaintiff, who was approximately 5'2" and weighed 138 pounds, had sufficient subcutaneous tissue in the thigh area for the injection at a ninety degree angle.  This Court had the opportunity to observe Plaintiff and agrees that, more likely than not, that when her skin was pinched up as plaintiff testified, she had sufficient subcutaneous tissue in the thigh area to make a ninety degree injection at that location appropriate.[2]  This is particularly so when considering that the needle on the syringe used to self-administer the Lovenox measured only one-half of an inch.

The proof before the Court is that, under the facts and circumstances of this case, the thigh was an appropriate injection area and such an injection could be given at ninety degrees.  Therefore, Defendant's having instructed Plaintiff to inject the needle into that area at a ninety degree angle after pinching up the skin at the injection site was not a breach of its duty of care.

   b.   **Causation**

Assuming, *arguendo*, that Defendant did breach its duty of care to Plaintiff, for the following reasons the Court finds that any such breach was not the proximate cause of Plaintiff's injury.

---

[2] Plaintiff argues that "[o]ne must assume that since there was a continuing bleed at the site of the injection, that there must have been some injection of the medication into muscle tissue." PI's Findings of Fact, Conclusions of Law and Summation at 3.  Plaintiff similarly argues that "[t]here was no testimony presented with respect to whether a bleed of this nature can occur when an injection takes place in subcutaneous tissue.  Therefore, we must assume that there was an inter-muscular injection because that is the only way a bleed of this magnitude could have occurred." Id. at 4.  The Court declines to make these assumptions.  There was insufficient evidence upon which such assumptions can be made.

First, there were no signs of compartment syndrome or other significant problems in the anterior portion of the thigh where the injection was administered.  Plaintiff was instructed on how to, and did, self-administer the medication on April 4.  The injection was to the anterior portion of the thigh.  Later that day, Plaintiff experienced pain in the lateral portion of the thigh - away from the location of the injection.

Second, if the injection was the source of the problem, it is expected that Plaintiff would have had signs when she went to the walk-in clinic on April 5 (the day after the injection).  However, the physician in the walk-in clinic did not make any significant findings.  The physician at the walk-in clinic did note ecchymosis.  More significantly, however, he did not note any swelling or other signs that would indicative of a problem caused by the Lovenox injection.

Third, the area of the injection itself (anterior area of the thigh) is compartmentalized by tissue, but the source of Plaintiff's pain, swelling, and sciatic neuropathy were found to have been in the lateral area of her thigh.  The Court has not been presented with an adequate explanation as to how an injection into a compartment in the anterior portion of the thigh could have caused problems in a distinct compartment in the lateral portion of the thigh.

Fourth, when Plaintiff went to the hospital on April 6, the pain in her thigh was determined to have been caused by deep vein thrombosis (a blood clot within a deep vein).  This diagnosis was consistent with Plaintiff's history and her pain.  At that time, there were no findings consistent with the conclusion that her pain or other conditions were caused by the Lovenox injection.

Fifth, Plaintiff experienced increased pain and a drop in blood pressure after she was administered Heparin at the hospital. These factors are consistent with spontaneous bleeding caused by the combination of Comadin already in her body and the excessive amounts of Heparin in her system. A CT scan revealed a hemorrhage in the left lateral pelvic muscles and adjacent thigh. Again, this is not in the location of the Lovenox injection.

Sixth, there was credible testimony that the foot drop was caused by pressure on the sciatic nerve, which runs down the back of the thigh. This finding is consistent with the location of Plaintiff's pain and swelling and spontaneous bleeding in her left lateral pelvic and thigh areas caused by the excessive amounts of Heparin, but inconsistent with the location of the Lovenox injection.

Based on the foregoing, the Court finds that the Lovenox injection into the anterior portion of Plaintiff's left thigh was not the proximate cause of her resultant foot drop. Rather, her injury is more consistent with spontaneous bleeding into a compartment in the lateral portion of the left thigh caused bya combination of Coumadin and excessive Heparin.

## III.    CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that Defendant breached any duty of care owed to Plaintiff or that the breach of any duty of care proximately caused Plaintiff's injuries. Accordingly, judgment shall be entered in favor of Defendant.

IT IS SO ORDERED.

Dated: November 28, 2005

Thomas J. McAvoy
Senior, U.S. District Judge

- 6 -